# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

DONLEN ABRASIVES, INC.,

               Plaintiff,

v.

FULL CIRCLE INTERNATIONAL, INC.,

               Defendant.

Civil No. 08-528 (JRT/FLN)

**MEMORANDUM OPINION
AND ORDER**

Kathryn K. Smith and Michael S. Sherrill, **SHERRILL LAW OFFICES, PLLC**, 4756 Banning Avenue, Suite 212, White Bear Lake, MN 55110-3205, for plaintiff.

Erik M. Drange, Kevin D. Conneely, and Ruth A. Rivard, **LEONARD STREET AND DEINARD, PA**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for defendant.

Plaintiff Donlen Abrasives, Inc. ("Donlen") brought this patent infringement action against defendant Full Circle International, Inc. ("Full Circle"), alleging that Full Circle's Flex Edge drywall sanding device infringes two of Donlen's patents. Full Circle asserts counterclaims against Donlen for declaratory judgment of non-infringement and invalidity. Both parties now move for summary judgment on the issues of infringement and non-infringement. For the reasons discussed below, the Court denies the parties' motions.

# BACKGROUND

This patent infringement case deals with sanding devices for use in sanding drywall. Generally, drywall installation requires four steps: (1) hanging, (2) taping, (3) "mudding," and (4) sanding. During the hanging step, drywall sheets are fastened to the framing of a room. In the second step, plaster is applied at the seams between drywall sheets, including at corners and other angles in the room, and tape is placed over the plaster while the plaster is still wet. In the third step, the "mudding" phase, one or more layers of plaster are applied over the tape. In the fourth step, when that plaster is dry, the plaster is sanded to a smooth finish using a sanding device.

The patents-in-suit, U.S. Patent Number 6,524,175 ("the '175 Patent") and U.S. Patent Number 6,227,959 ("the '959 Patent"), were issued to Donlen and disclosed sanding devices. The summary of the '175 Patent states:

> The present invention is a sanding sponge primarily intended to be used for sanding angles and corners of finished dry wall[.] The sanding sponge is a body formed from a resilient foam material having an abrasive disposed on its bottom and side surfaces. The sanding sponge **has a distinctive shape**, the resilient foam body being formed in the **shape of a right prism** whose **bases are isosceles trapezoids** so that the opposed lateral faces and the bottom surface of the sanding sponge are joined **at an acute angle**. This configuration is ideal for sanding the corners and angles of finished drywall, as it permits sanding of one wall forming the corner without abrading the orthogonal wall.

U.S. Pat. No. 6,524,175, col.3 ls.17-28 (filed Dec. 4, 2000) (emphasis added). The '959

Patent summarizes the patented device in a similar manner.[1] *See* U.S. Pat. No. 6,227,959,

col.2 l.57 – col.3 l.3 (filed Sept. 23, 1998).



'175 Patent, Fig. 1.

The Full Circle-manufactured Flex Edge (the "accused product"), is a sanding

device with a top, an abrasively coated bottom, abrasively coated lateral or side faces,

and ends. The Flex Edge system includes a pressure pad, a foam pad, sanding paper, and

a Flex Angle pad having an abrasive coating directly affixed to the pad surfaces. The

Flex Angle pad is the focus of the instant infringement claims. The Flex Angle pad

includes a rectangular bottom surface, two sides lying at an angle of approximately thirty

degrees relative to the bottom surface, two ends lying at an angle of approximately forty-

five degrees relative to the bottom surface, and a channel extending along the length of

the pad.

---

[1] For the purposes of this motion, '175 and '959 Patents are fundamentally the same.
(The '959 Patent includes claims, figures, and a description for a sanding sponge "kit.")



Photograph of the Flex Angle pad

(Annis Decl., Docket No. 27, Ex. B.)

Donlen asserts that the accused product infringes claim 12 of the '175 Patent and claims 1 and 3 of the '959 Patent under the doctrine of equivalents. Claim 12 of the '175 Patent claims a "one piece body composed of a resilient flexible material, the **body having the shape of a right prism** having a pair of **bases** and wherein each of the bases is an isosceles trapezod [sic]." '175 Patent, col.7, l.28 – col.8 l.13 (emphasis added). The only asserted independent claim in the '959 Patent, claim 1, claims "a one-piece body composed of a resilient flexible material, the **body having the shape of a right prism** wherein each of the **bases** is an isosceles trapezoid." '959 Patent, col.6, ls.36-47 (emphasis added).

It is undisputed that the fundamental difference between the description of the patented device in the asserted claims and the accused product is that the accused product has slanted ends or "bases," while the patents-in-suit describe ends or "bases" that are positioned at a 90-degree angle; that is, the bases form a sanding sponge in the shape of a right prism. That structural difference forms the basis for the parties' dispute regarding whether the accused product infringes two asserted claim limitations under the doctrine

of equivalents. First, the parties dispute whether the shape of the Flex Angle pad, which Donlen describes as being in the shape of a "frustum of right wedge," is equivalent to the asserted claim element "body having the shape of a right prism" in claim 12 of the '175 Patent and claims 1 and 3 of the '959 Patent. Second, the parties dispute whether the Flex Angle pad's inwardly slanted ends are equivalent to the claim element "bases" as set forth in the asserted claims.

Donlen and Full Circle submitted a Joint Claim Construction, which construes the relevant claim elements: a "prism" is "[a] solid formed by planar faces with an opposing pair of parallel and congruent polygonal faces (bases), the bases joined by parallelograms;" a "right prism" is "[a] solid formed by planar faces with an opposing pair of parallel and congruent polygonal faces (bases), the bases joined by rectangular faces that are perpendicular to the bases;" and "bases" are "[t]he two parallel faces of a prism that are formed of congruent polygons." (Joint Claim Construction, Docket No. 17, at 2.)

The case is now before the Court on Full Circle's motion for summary judgment of non-infringement and Donlen's motion for summary judgment of infringement under the doctrine of equivalents.

## DISCUSSION

## I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In an infringement analysis, the Court follows a two-step process where "the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device."  *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999).  "Whether the accused device contains an element corresponding to each claim limitation or its equivalent is a question of fact, which, on summary judgment, is a question [the Court analyzes] to determine whether a material factual issue remains genuinely in dispute."  *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369-70 (Fed. Cir. 2002).

In infringement cases, "[s]ummary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury."  *Id.* at 1369 "Summary judgment of noninfringement is also appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."  *Id.*

## II.    INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."[2]  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).   Infringement under a doctrine-of-equivalents analysis is similar to a literal infringement analysis in that infringement is analyzed on an element-by-element basis.  *Id.* at 29.  "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art."  *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002).   An accused product may be insubstantially different "if it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929)) (internal quotation marks omitted).

In short, Donlen argues that the only difference between the accused product and the asserted claims is an "insubstantial cosmetic change in the spatial orientation of the sanding pad," and further contends that Full Circle avoided literal infringement of the

---

[2] Donlen does not contend, and the record does not support a finding, that the accused product literally infringes the asserted claims in the '175 Patent or the '959 Patent.

claims by "simply slanting the ends of the Accused Product." (Donlen Mem. in Opp'n to Mot. for Summ. J., Docket No. 38 at 5, 12 (emphasis omitted).)

## A. The All-Elements Rule and Claim Vitiation

Full Circle asserts that a finding that the accused product has elements that are equivalent to the "right prism" and "bases" elements would vitiate those limitations. Under the "all elements" or "all limitations" rule, "an accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). There are two primary considerations: "First, the all limitations rule requires that equivalence be assessed on a limitation-by-limitation basis, as opposed to from the perspective of the invention as a whole." *Id.* "Second, an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Id.*; *see also Lockheed Martin Corp. v. Space Sys./Loral, Inc.,* 324 F.3d 1308, 1321 (Fed. Cir. 2003).

The Court considers the totality of the circumstances in determining whether the alleged equivalent element "can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating*, 420 F.3d at 1359. In some circumstances, "the 'all elements' rule forecloses resort to the doctrine of equivalents because, on the facts or theories presented in a case, a limitation would be read completely out of the claim – *i.e.*, the limitation would be effectively removed or 'vitiated.'" *DePuy Spine, Inc. v. Medtronic Sofamor*

*Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006). The Federal Circuit has noted various factors that may be relevant to this analysis, including "the simplicity of the structure, the specificity and narrowness of the claim, and the foreseeability of variations at the time of filing the claim with the [United States Patent and Trademark Office]." *Freedman Seating*, 420 F.3d at 1360; *see also Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997).

In *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, the Federal Circuit further explained the effect of the "claim vitiation" rule:

> It is important to note that when we have held that the doctrine of equivalents cannot be applied to an accused device because it "vitiates" a claim limitation, it was not to hold that the doctrine is always foreclosed whenever a claim limitation does not literally read on an element of an accused device; such an interpretation of the "all elements" rule would swallow the doctrine of equivalents entirely. "[A]ny analysis of infringement under the doctrine of equivalents **necessarily** deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim." A holding that the doctrine of equivalents cannot be applied to an accused device because it "vitiates" a claim limitation is nothing more than a conclusion that the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency.

469 F.3d at 1018-19 (citations omitted) (emphasis in original).

Full Circle contends that a finding of equivalence here would vitiate the asserted claim limitations. First, Full Circle argues that the patented sanding device, defined as a "right prism," "is a simple, well-defined geometric structure." (Mem. in Supp. of Mot. for Summ. J., Docket No. 26, at 20.) Second, Full Circle claims that Donlen claimed the structure with specificity and, according to the prosecution history, did not attempt to

claim anything beyond merely a right prism.  (*Id.*)  Finally, Full Circle argues that it was foreseeable at the time Donlen submitted the patent to the United States Patent and Trademark Office ("USPTO") that the shape of the sanding sponge could be varied.  In particular, Full Circle argues that Donlen was aware that it was seeking a patent for a product that was in a "crowded field" of sanding sponges, many of which were distinguishable by shape.  *See Sage Prods.*, 126 F.3d at 1425 ("[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure.").  As a consequence, Full Circle argues, Donlen cannot assert that the "non-prismatic" shape of the accused product is equivalent to the "right prism" claim limitation.  Further, Full Circle contends that Donlen cannot claim that the accused product has an element equivalent to the claim limitation "bases," because such a finding would read the term "bases" out of the claims.  That is, Full Circle argues that the slanted ends on the accused product are not "two parallel faces of a prism," which is how the parties have jointly construed the "bases" claim element.

Donlen counters that a finding of equivalence would not vitiate the claim elements, arguing that the accused product's body in the shape of a "frustum of right wedge" is equivalent to the claimed element "body having the shape of a right prism," and the accused product's "inwardly slanted ends" are equivalent to the claimed "bases." For the reasons that follow, the Court agrees that a finding of equivalence in these circumstances would not vitiate either claim limitation.

Full Circle points to several Federal Circuit cases in support of its claim-vitiation argument, asserting that the absence of a prismatic **shape** in the accused product precludes a finding of equivalency. In *Bicon Inc. v. The Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006), the Federal Circuit held that an accused product's **concave** structure on a conical, or trumpet-shaped, abutment was not equivalent to a claim limitation describing a **convex**, frusto-spherical base of an abutment. The Federal Circuit reasoned that a concave, frusto-conical shape was "clearly contrary to, and thus excluded by, the patentee's characterization of its abutment as having a convex, frusto-spherical shape." *Id.* at 955-56. Similarly, in *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d at 1424, the Federal Circuit held that a container for disposal of sharp medical instruments that had two constructive barriers, both located below the slot in the container, was not equivalent to a limitation claiming a container with two constructive barriers, one above and one below the slot. *See id.* ("[T]he doctrine of equivalents does not grant Sage license to remove entirely the 'top of the container' and 'over said slot' limitations from the claim.").

In a similar vein, Full Circle contends that Donlen should not be permitted to capture a shape or structure that is the "antithesis" of the shape claimed in the patent. *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) ("[I]t would defy logic to conclude that a minority – the very antithesis of a majority – could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise."). Specifically, Full Circle argues that in a three-dimensional

structure, the 45-degree angle of the ends of the accused product is the antithesis of the 90-degree angle of the bases in the patents.

The instant case is distinguishable from the Federal Circuit cases cited by Full Circle. Here, the shape of accused product is not clearly contrary to the claimed shape of the patented invention. The question is not whether a **concave** accused product is equivalent to a disclosed **convex** shape or whether an accused product with a constructive barrier **above** the top of the container is equivalent to a disclosed structure with two constructive barriers **below** the top of the container. Rather, the question is whether a finding of equivalency in an accused product with ends that are slanted 45 degrees, as in the Flex Angle pad, would vitiate a claim describing a shape that is formed with bases that are positioned at a 90-degree angle from the bottom face of the sanding sponge. The Court finds no basis in law or fact for the argument that a 45-degree angle is the antithesis of a 90-degree angle. Moreover, the Court is not persuaded that the shape element of the accused product is necessarily contrary to or the opposite of the asserted claim limitation describing right prism.[3]

In addition, although the patented device is relatively simple and claimed with some degree of specificity, the Court cannot find as a matter of law that a finding of equivalency would vitiate the claim limitations, notwithstanding their "different" shapes. In the cases cited by Full Circle, the Federal Circuit addressed patented and accused

---

[3] As the Supreme Court noted in *Graver Tank*, "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or **shape**." 339 U.S. at 608 (emphasis added).

devices that were directly contrary to one another or involved shapes that were the direct opposite of one another. Although the Court offers no opinion as to what shape is contrary to or the opposite of a "right prism," the shape of the Flex Angle pad is not contrary to a right prism.

In sum, the Flex Angle pad is not contrary to or antithetical to the claim elements in the '175 or '959 Patents, and a finding of equivalency, assuming that such equivalency can be established under the function-way-result test, would not vitiate the "right prism" or "bases" limitations claimed in the patents-in-suit.[4] Accordingly, the Court denies Full Circle's motion for summary judgment to the extent that it argues that a finding of equivalence would vitiate the claim limitations.

The Court thus turns to the question of whether the accused product is insubstantially different from the disclosed device under the function-way-result test.

### B. Function-Way-Result Analysis

An evaluation of "insubstantial difference" under the doctrine of equivalents may be based on an inquiry of whether the equivalent element in the accused product

---

[4] Full Circle also cites *Tronzo v. Biomet, Inc.*, where the Federal Circuit concluded that an accused product – an artificial hip prosthesis – with a hemispherical cup did not infringe a claim limitation requiring the prosthesis to have a "generally conical outer surface." 156 F.3d 1154, 1160 (Fed. Cir. 1998). In *Tronzo*, however, the Federal Circuit did not conclude that a finding of equivalence would vitiate the claim limitation; rather, it concluded that because the two shapes produced different forces when implanted in the body, the patent owner was unable to establish the "way" element in the function-way-result analysis. *Id.*; *see also Optical Disc Corp. v. Del Mar Avionics*, 208 F.3d 1324, 1337 (Fed. Cir. 2000) ("*Tronzo* does not stand for the proposition that a claim limitation describing a specific shape of a claimed structure cannot be infringed under the doctrine of equivalents by a differently shaped structure.").

(1) performs substantially the same function; (2) in substantially the same way; (3) to obtain the same result as the claimed element. *Graver Tank*, 339 U.S. at 608.

### 1. "Right Prism" and "Bases"

Donlen argues that the accused product, which it claims is in the shape of a "frustum of right wedge," is insubstantially different from the claim limitation "body having a shape of a right prism" because it:

> (1) serves the same function (*i.e.*, providing the sanding pad with exposed abrasive-coated lower lateral edges), (2) in the same way (*i.e.*, shaping the sanding pad so that the abrasively coated side faces and the bottom surface of the sanding pad are joined at an acute angle (i.e., an angle of less than 90°)), and (3) to achieve the same result (*i.e.*, a sanding pad that is ideal for sanding the corners and angles of finished drywall by permitting the sanding of one wall forming the corner without abrading the orthogonal wall).

(Donlen Mem. in Opp'n to Mot. for Summ. J., Docket No. 38 at 14 (emphasis omitted).)

Further, Donlen argues that the slanted ends on the accused product are insubstantially different from the claimed "bases" because the slanted ends:

> (1) serve the same function (*i.e.*, providing a sanding pad of less than perpetual length), (2) in the same way (*i.e.*, congruent ends each shaped as isosceles trapezoids, (3) to achieve the same result (*i.e.*, a sanding pad of unspecified but defined length) as the bases of the claimed invention.

(Donlen Opp'n. Mem., Docket No. 38 at 14 (emphasis omitted).)

Donlen's arguments are premised on the affidavit and opinion of Leonard Launderville, who is a named inventor on the '175 and '959 Patents. In his affidavit, Launderville opines that the angled ends of the Flex Angle pad are "trivial" and serve no real function. (Launderville Aff., Docket. No. 41, ¶¶ 7, 13.) Launderville further

contends that the angled ends of the Flex Angle pad "do not alter, adjust, influence, improve or otherwise impact the functionality of the pad" and concludes that the angled ends do not provide a benefit or advantage in the manufacturing or sanding performance of the pad.  (*Id.* ¶ 13.)

Full Circle introduces testimony from its expert, Myron Ferguson, to establish that the accused product does not perform substantially the same function, in substantially the same way, to achieve the same results as the literally missing claim elements.

### a.  The Launderville affidavit is admissible

Full Circle argues that the Launderville Affidavit is inadmissible and should be excluded from consideration because it is not based on personal knowledge and because it offers improper and unfounded opinion testimony.  Rule 56(e)(1) provides that an affidavit supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e)(1); *see also Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983).  Full Circle contends that Launderville's affidavit is not based on personal knowledge because (1) Launderville has no actual knowledge of how the Flex Angle pad works because he has never used it; and (2) Launderville has no personal knowledge of the construction of the Flex Edge system or the specific dimensions of the Flex Angle pad component.  Full Circle further contends that "opinion testimony" is generally only appropriate if offered through an expert.  Full Circle argues that because

Launderville was not disclosed as an expert and because Donlen did not provide Full Circle with an expert report in accordance with the Court's scheduling order, Launderville's opinion is inadmissible and should not be considered.

The Court disagrees. Although Launderville admitted that he had never used the Flex Edge system, Launderville stated that he observed a demonstration of the Flex Edge, examined the Flex Angle sanding pad, and concluded on the basis of those observations that the accused product is insubstantially different from the patent claims. Under those circumstances, and given that Donlen represented that Launderville has over twenty-five years of experience in the sanding business, the Court concludes that Launderville is a person of ordinary skill in the art and is qualified to advance an opinion on equivalence.

In addition, the Court finds no support for Full Circle's argument that only expert opinions may be submitted in support of or opposition to a motion for summary judgment. To the extent that Launderville's opinion is rationally based on his own perception and is helpful in the determination of the fact issues here, the affidavit is admissible. Fed. R. Evid. 701; *cf. Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 69-93 (Fed. Cir. 2001). In sum, the Launderville affidavit is sufficient to establish a factual basis for infringement in the context of these motions.

### b. There is a material fact dispute regarding infringement

Full Circle offers the opinions of its expert, Myron Ferguson, to rebut Launderville's opinion. Ferguson, a drywall contractor with twenty-seven years of experience with drywall sanding tools, opines that the differences between the patent

claims and the accused product are significant. In particular, Ferguson challenges the assertion that the slanted ends on the Flex Angle pad are trivial or cosmetic modifications. (Ferguson Expert Report, Docket No. 54, ¶ 20.) First, Ferguson opines that the slanted ends on the Flex Angle pad enable sanding into a three-way corner between two adjacent walls and the ceiling without damaging the ceiling. (*Id.* ¶ 22.) In contrast, Ferguson asserts that the patented product would not provide the same benefit because the bases on that device would come into contact with the ceiling, potentially causing damage to the ceiling or its finish. (*Id.* ¶ 23.) Ferguson also contends that the design of the Flex Angle pad makes it much less likely that the device will catch and flip over when sanding an uneven surface on drywall. (*Id.* ¶ 28.)

In sum, Ferguson opines that the function of the Flex Angle pad is to allow the sanding device to travel into corners without damaging the ceiling. According to Ferguson, the Flex Angle pad accomplishes that result by virtue of the device's angled end, which allows only a thin edge of the pad to come in contact with the ceiling. Ferguson concludes that the result is a device that can sand finished drywall into the corners of a three-way corner. Ferguson also notes that the Flex Angle pad offers the additional benefit of protecting a second wall during the sanding process.

The presence of an additional function or benefit is not determinative in the function-way-result analysis. Indeed, "in order for a court to find infringement, the plaintiff must show the **presence of every element or its substantial equivalent in the accused device**." *Lemelson v. United States,* 752 F.2d 1538, 1551 (Fed. Cir. 1985)

(emphasis added). Evaluating whether **the patented device** has an element equivalent to an element **in the accused product** would require the Court to reverse that analysis.

In addition, Donlen and Full Circle have each offered opinions and affidavits supporting their positions under the function-way-result analysis. "A finding of equivalence is a determination of fact," *Graver Tank*, 339 U.S. at 609, and where there is a genuine dispute of fact regarding infringement or non-infringement, the Court will not grant summary judgment to either party. *See also Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008) ("[N]on-infringement under the reverse doctrine of equivalents is a question of fact."). Here, the Court finds that both Donlen and Full Circle have brought forth opinions supporting their positions under the function-way-result analysis, and a rational trier of fact could find in favor of either party on the issue of infringement.

### 2. Prosecution History Estoppel

Full Circle suggests that the prosecution history of the patents-in-suit estops Donlen from asserting infringement under the doctrine of equivalents. As a policy limitation to the doctrine of equivalence, "prosecution history estoppel will not allow the patentee to recapture through equivalence certain coverage given up during prosecution." *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985), *overruled on other grounds*, *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998). "Under this doctrine, the surrender of subject matter during patent prosecution creates a presumption that the patentee is precluded from recapturing that subject matter through

the doctrine of equivalents; this presumption can be rebutted by the patentee through a showing that an amendment was unrelated to patentability." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1325 (Fed. Cir. 2007). Thus, when the doctrine of equivalents is invoked, there must be an examination not only of **what** was surrendered, but also **why** it was surrendered. *Loctite,* 781 F.2d at 871.

During the prosecution of the '175 and '959 Patents, the USPTO required Donlen to distinguish the disclosed sanding sponges from a rectangular-shaped sanding pad disclosed in a prior art reference. In differentiating the devices, Donlen stated that the prior rectangular-shaped devices:

> could be used on one wall, but the **side surface** . . . would necessarily abrade the adjoining wall as the junction is approached . . . . By contrast, the sanding sponge of the present invention has the shape of a right prism wherein each of the bases of the prism is an isosceles trapezoid . . . . This means that as the bottom surface is used to sand one wall up to the corner junction between the two walls, the side surface slopes away from the adjoining wall so that the adjoining wall is not abraded.

(Sherrill Aff., Docket No. 40, Ex. 9, at 9 (emphasis added).)

Donlen concedes that such a statement surrenders any expansion of the asserted claims to encompass a sanding pad with **side surfaces** that are perpendicular (at 90-degree angles) to the bottom surface of the pad. Donlen does not concede, however, that such amendment foreclosed the application of the doctrine of equivalents regarding the orientation of the ends or bases of the sanding sponge.

Donlen also notes that during the prosecution history of the '175 Patent, Donlen was asked to replace the claim language "wherein each of the bases is an isosceles trapezoid" with the phrase "having a pair of bases wherein each of the bases is an

isosceles trapezoid." (Donlen Mem. in Opp'n to Mot. for Summ. J., Docket No. 38 at 20.) Donlen asserts, however, that such amendment reflected only a change in style, and was not made to avoid prior art in the field or to otherwise address a USPTO rejection based on the merits of the claimed subject matter.

Given the record before the Court at summary judgment, the amendments to the "right prism" claim language do not appear to indicate that Donlen surrendered subject matter outside of a "right prism," but merely reiterate the functional difference between a sanding sponge with sides at an acute angle from the bottom face of the device and a sanding device with sides positioned at a ninety-degree angle from the bottom face. Moreover, the amendment to the "bases" claim limitation only clarifies the number of bases present as a matter of style, and does not surrender any subject matter regarding the composition or position of the bases. In sum, the Court cannot conclude that the prosecution history or amendments to the claim language during the prosecution of the patents-in-suit preclude Donlen from asserting infringement of the "right prism" and "bases" claims under the doctrine of equivalents.

Because the parties have demonstrated that there are material fact disputes relating to the question of infringement, and because the Court finds that the all-limitations rule and prosecution history estoppel do not preclude as a matter of law a finding of infringement, the Court denies both motions for summary judgment in their entirety. After addressing the parties' claim construction issues, if any remain, the Court will place this case on its next available trial calendar.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff Donlen Abrasives, Inc.'s Motion for Summary Judgment [Docket No. 47] is **DENIED**.

2.      Defendant Full Circle International, Inc.'s Motion for Summary Judgment [Docket No. 24] is **DENIED**.


DATED:  September 30, 2009            _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                  United States District Judge